RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 8/2/10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LEON MANDERSON** | **CIVIL ACTION NO.: 08-CV-881** |
| **VERSUS** | **JUDGE HAIK** |
| **CHET MORRISON CONTRACTORS, INC.** | **MAGISTRATE JUDGE HANNA** |

## REASONS FOR JUDGMENT

**A.    Facts**

Before the Court is a Jones Act suit arising out of the Plaintiff's employment aboard the Defendant's dive vessel, the JILLIAN MORRISON. On or about November 16, 2006, the plaintiff, Leon Manerson, began working as chief engineer aboard the JILLIAN MORRISON. Plaintiff alleges that the defendant failed to adequately man the JILLIAN MORRISON engine room resulting in Plaintiff having to work weeks at a time as the sole caretaker of the engine room and remain on call 24/7, all in violation of 46 C.F.R. 15. Plaintiff also claims that defendant violated the Jones Act, 46 U.S.C. Section 688. Plaintiff contends that his ulcerative colitis and diabetes were exacerbated by his lack of sleep which was a result of his working 24/7 aboard the Defendant's vessel.

**B.    Plaintiff's Contentions**

Plaintiff contends that he worked on a 24/7 basis while engaged as the sole licensed engineer aboard the M/V JILLIAN MORRISON between November 16, 2006 and mid-January 2008. Thus, by requiring the plaintiff to work this schedule without adequate relief, the Defendant violated 46 C.F.R. Part 15.1111(a) entitled, "Work hours and rest periods," which

mandates:

> "After January 31, 1997, each person assigned duty as officer in charge of a navigational or engineering watch, or duty as a rating forming part of a navigational or engineering watch, on board any vessel that operates beyond the Boundary Line shall receive a minimum of 10 hours of rest in any 24-hour period."

Plaintiff argues that the Defendant violated this regulation because it failed to provide the Plaintiff with 10 hour periods of rest with no interruptions.

Additionally, Plaintiff argues that according to 46 C.F.R. Part 15.1109, the JILLIAN MORRISON's master is mandated to, "ensure observance of the principles concerning watch keeping." Plaintiff contends that the master aboard the JILLIAN MORRISON failed to comply with any watch keeping statute. The plaintiff testified that no watch schedules were posted on the vessel during his employment. Thus, the defendant violated the aforementioned regulation and 46 C.F.R. Part 1111(g), which requires the master of a vessel to post watch schedules where they are easily accessible to the crew.

Plaintiff argues that the defendant did not have licensed engineers onboard the M/V JILLIAN MORRISON who could relieve the plaintiff in accordance with 46 C.F.R. Part 15.1103 entitled, "Employment and service within restrictions of a license, document, and STCW endorsement or of a certificate of training. 46 C.F.R Part 15.1103(c) states:

> "After January 31, 2002, on board a seagoing vessel driven by main propulsion machinery of 750kW [1,000 hp] propulsion power or more, no person may employ or engage any person to serve, and no person shall serve, in a rating forming part of a watch in a manned engine-room, nor may any person be

> designated to perform duties in a periodically unmanned engine-room, except for training or for the performance of duties of an unskilled nature, unless the person serving holds an appropriate, valid STCW certificate or endorsement issued in accordance with part 12 of this chapter."

Plaintiff argues that the defendant violated 46 C.F.R. Part 15.1103(c) by failing to man the boat with crew members who held valid STCW certificates or endorsements that could relieve him from his duties. Plaintiff argues that Morrison added to plaintiff's burdens by providing him alleged assistants who had little or no prior sea experience, nor any engine room experience.

Plaintiff argues that Defendant's persistent violation of work hours statutes and its failure to follow U.S. Coast Guard regulations designed for the safety of seaman is negligence *per se*.[1] Plaintiff also argues that the Defendant did not comply with the manning requirements of its Certificate of Inspection. Plaintiff provides that long standing case law has uniformly ruled that work hour statutes trump a vessel's Certificate of Inspection if additional vessel personnel are required to comply with work hour limitation statutes.[2]

Plaintiff cites *In the Matter of the Complaint of POTOMAC TRANSPORT, INC. supra,* 741 F.Supp. at 403-04, which explained that even where that defendant vessel owner, complied with the vessel's Certificate of Inspection but still failed to have sufficient deck officers to satisfy watch statutes, the Certificate of Inspection provided no defense:

> "Merely manning the vessel, as the POTOMAC did on its fateful voyage, with the number of deck officers entered in the Certificate of Inspection does not comply

---

[1] *Kernan v. American Dredging Company*, 355 U.S. 426, 438-39, 78 S.Ct. 394 (1958); *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1241-42 (5th Cir. 1994).

[2] *Southern Pacific Company v. Hair,* 24 F.2d 94 (5th Cir. 1928).

with the statute (citations omitted)."

Plaintiff contends that the defendant's decision to operate the JILLIAN MORRISON in violation of its Certificate of Inspection and the manning statutes rendered the JILLIAN MORRISON unseaworthy. A vessel is unseaworthy when its crew is inadequate or incompetent.[3] Liability is imposed for unseaworthiness regardless of the vessel owner's negligence or failure to exercise reasonable care.[4]

Plaintiff seeks general damages for the defendant's Jones Act negligence, statutory violations, and the unseaworthiness of the JILLIAN MORRISON. Plaintiff also seeks general damages for the defendant causing or contributing to the exacerbation of plaintiff's ulcerative colitis and subsequent total removal of his colon on January 27, 2009. Plaintiff seeks special damages in the form of all medical expenses, past and future, incurred in connection with plaintiff's exacerbated ulcerative colitis and total colon removal and diabetes. Plaintiff also seeks past earnings since January 24, 2008 until time of trial and future lost earnings from the time of trial for the remainder of plaintiff's work life expectancy.

Plaintiff seeks recovery of maintenance and cure relating to his exacerbated ulcerative colitis and newly diagnosed diabetes. In connection with his maintenance and cure claim, Plaintiff also seeks: all medical expenses incurred since January 24, 2009 in connection with his ulcerative colitis and diabetes which became symptomatic in the course and scope of plaintiff's employment with Morrison; cost of living expenses recoverable under *Hall v. Noble Drilling*, 242 F.3d 582 (5th Cir. 2001) and punitive damages for Morrison's arbitrary and capricious denial

---

[3] *Kratzer v. Capital Marine Supply, Inc.*, 490 F.Supp. 222, 229 (M.D. La. 1980), aff'd, 645 F.2d 477 (5th Cir. 1981).

[4] *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991).

of maintenance and cure.

C. **Defendant's Contentions**

Defendant argues that it did not violate the United States Coast Guard work/rest hour regulations. Defendant provides that while aboard the JILLIAN MORRISON, Plaintiff was the crew member responsible for the engine room and set his own hours. The defendant submits that the plaintiff always had the assistance of other vessel crew members available to him, such as able-bodied seaman. Further, for long periods of time while aboard the vessel, Plaintiff either had a mechanic or oiler specifically assigned to the engine room to assist him. Defendant alleges that at the end of Plaintiff's service with the defendant, the plaintiff frequently had the assistance of another licensed engineer to assist him with his tasks.

The defendant maintains that any violation of Coast Guard regulations were solely at the fault of the plaintiff. Defendant argues that as the licensed engineer aboard the JILLIAN MORRISON, the plaintiff was responsible for setting his own schedule. Defendant also argues that the Plaintiff cannot establish a causal link between any negligence or unseaworthiness and his medical condition. Defendant maintains that the plaintiff's history of Hepatitis C, ulcerative colitis, diabetes, and coronary artery disease were not caused by or related to any of his work related activities aboard the JILLIAN MORRISON.

Defendant argues that even if the plaintiff is able to establish a causal link between any negligence, unseaworthiness, and his medical condition, any aggravation of plaintiff's pre-existing chronic medical conditions were merely temporary and insignificant. Defendant also argues that the plaintiff has failed to mitigate his damages by seeking alternate work he is capable of performing. Defendant's submit that Plaintiff's colectomy does not prevent him from returning to his previous employment.

As to maintenance and cure, the defendant contends that there is no evidence that it caused or contributed to any aggravation of plaintiff's pre-existing conditions such that maintenance and cure is available to the plaintiff. Defendant insists that the plaintiff failed to reveal his pre-existing history of high glucose levels and diabetes at the time he was hired. Thus, Plaintiff's failure to reveal the pre-existing condition disqualifies him from maintenance and cure pursuant to *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968).

D.  **Analysis**

The issues before the Court are whether CMC was negligent under the Jones Act; whether the M/V JILLIAN MORRISON was unseaworthy under General Maritime Law; whether the plaintiff is entitled to damages, and, if so, the amount of damages; and whether the plaintiff is entitled to maintenance and cure and, if so, for what period of time.

*Jones Act*

Plaintiff's Jones Act claim is based on defendant's alleged violations of 46 C.F.R. 15.501, entitled, "Work Hours and Rest Periods." The regulation provides that "(a) Each person assigned duty as officer in charge of a navigational or engineering watch, or duty as a rating forming part of a navigational or engineering watch, on board any vessel that operates beyond the Boundary Line shall receive a minimum of 10 hours of rest in any 24-hour period; (g) The Master shall post watch schedules where they are easily accessible. They must cover each affected member of the crew and must take into account the rest requirements of this section as well as port rotations and changes in the vessel's itinerary."

Plaintiff also bases his Jones Act claim on the Defendant's alleged violation of 46 C.F.R. 15.1103 (c) which provides, "On board a seagoing vessel driven by main propulsion machinery of 750 kW [1,000 hp] propulsion power or more, no person may employ or engage any person to

serve, and no person may serve, in a rating forming part of a watch in a manned engine-room, nor may any person be designated to perform duties in a periodically unmanned engine-room, except for training or for the performance of duties of an unskilled nature, unless the person serving holds an appropriate, valid STCW certificate or endorsement issued in accordance with part 12 of this chapter."

A seaman is obligated under the Jones Act to act with ordinary prudence under the circumstances and to exercise that degree of care for his own safety that a reasonable seaman would exercise under the same or similar circumstances.[5] A seaman must use his own experience, training, or education in exercising reasonable care for his own safety.[6] Likewise, a Jones Act employer has a duty to provide its seaman with a reasonably safe place to work.[7] The employer must have actual or constructive notice of an unsafe condition and an opportunity to correct it before liability attaches.[8] The standard of care is not "what the employer subjectively knew, but rather what it objectively knew or should have known."[9]

As to Plaintiff's Jones Act claim, the Court must decide whether Chet Morrison violated the work hour statutes set out in the Code of Federal Regulations. 46 C.F.R. 15 governs the Manning Requirements for vessels such as the M/V JILLIAN MORRISON. 46 C.F.R. 15.501, entitled, "Certificate of Inspection" provides, "(a) The certificate of inspection (COI) issued by an Officer in Charge, Marine Inspection (OCMI), to a vessel required to be inspected under 46

---

[5] Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 339 (5th Cir. 1997).

[6] Id.

[7] Colburn v. Bunge Towing, Inc., 883 F.2d 372, 374 (5th Cir. 1989).

[8] Id.

[9] Id.

U.S.C. 3301 specifies the minimum complement of officers and crew necessary for the safe operation of the vessel; (b) The manning requirements for a particular vessel are determined by the OCMI after consideration of the applicable laws, the regulations in this part, and all other factors involved, such as: Emergency situations, size and type of vessel, installed equipment, proposed routes of operation including frequency of port calls, cargo carried, type of service in which employed, degree of automation, use of labor saving devices, and the organizational structure of the vessel."

The Plaintiff has failed to provide the Court with any evidence of the Plaintiff's work schedule while on board the M/V JILLIAN MORRISON. Although the defendant provided the Court with the Vessel and Engineering Logs of the JILLIAN MORRISON during the plaintiff's employment, there is no evidence showing whether the plaintiff did or did not rest for 10 hours every 24 hour period he was on call. Although the plaintiff testified that he worked sixteen to eighteen hours per day, the Court was not provided any objective evidence regarding his work schedule aboard the defendant's vessel. Given the lack of evidence, the Court is unable to hold that the Defendant has violated 46 C.F.R. 15.501 (a).

As to alleged violation of 46 C.F.R. 15.501(g), the evidence and the testimony at trial revealed that the Defendant did in fact fail to post watch schedules which would have informed the Plaintiff of when he was to rest. However, the Court does not find that it is practical within this industry for masters of vessels manned with such a small crew to post a rest schedule. The Court is also of the opinion that it was ultimately up to the crew members to rest as they saw needed. The Court cannot assume that the posting of a watch schedule would have compelled the plaintiff to rest more. Nor can it hold the defendant liable for the plaintiffs own failure to rest during his employment. The Court cannot hold the defendant liable based on its failure to post

watch schedules on its vessel. The plaintiff had an obligation as a seaman to act with ordinary prudence and get rest when he felt he needed to do so.

With regard to 46 C.F.R. 1503 (c), the Court is unable to find that the defendant failed to provide the plaintiff with adequate relief during his employment aboard the vessel. Again, the plaintiff has failed to provide the Court with evidence proving whether or not he was adequately relieved of his duties. If the Plaintiff had provided the Court with the proof necessary to establish his work hours, the Court may have found that the Defendant was in violation of this regulation by providing the Plaintiff with A/B's instead of skilled help in the engine room. However, the Court has no record of the actual work hours, and therefore, cannot find liability based upon a violation of 46 C.F.R. 1503 (c).

The Court does not hold the defendant liable to the plaintiff under the Jones Act. The Court has no evidence to show that the defendant refused to allow the plaintiff rest during his 24 hours a day 7 day a week work schedule. Nor does the Court have any evidence of the plaintiff providing the defendant with notice of the lack of assistance aboard the vessel, although, as a seaman he was obligated to do so. While practically speaking the defendant may have known that there was not enough men on the vessel, the Court has no objective evidence showing the Defendant's actual knowledge of the alleged problem.

*General Maritime Law*

In addition to his claim for negligence under the Jones Act, the Plaintiff has also made a claim for unseaworthiness under General Maritime Law. As a Jones Act employer, the defendant has a non-delegable duty to provide a seaworthy vessel, which is generally defined as a vessel, crew and appurtenances that are reasonably fit for the vessel's intended purpose. To establish a claim of unseaworthiness, the injured seaman must prove that the owner has failed to provide a

vessel, including equipment and crew, which is reasonably fit and safe for the purposes for which it is used. In addition, the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy.

Plaintiff has also alleged that CMC is negligent *per se*. Under the doctrine of negligence *per se*, a Jones Act employer may be liable if its violation of a statutory duty causes injury to its seaman-employee. In order to establish negligence *per se* in the Fifth Circuit, a Jones Act plaintiff must establish:

1. A violation of Coast Guard regulations;
2. Plaintiff' membership in the class of intended beneficiaries of the regulations;
3. An injury of the type against which the regulations are designed to protect;
4. The unexcused nature of the regulatory violation; and
5. Causation.

Plaintiff has also alleged that the Defendant's vessel was unseaworthy *per se*. In order to prove this, the plaintiff must establish proximate cause. Specifically, the Plaintiff must prove that (1) the unseaworthiness played a substantial part in bringing about or actually causing the injury and that (2) the injury was either a direct result or a reasonable probable consequence of the unseaworthiness.

The JILLIAN MORRISON's Certificate of Inspection required one chief engineer to be on board considering that the vessel was equipped with an automated engine room. The Certificate of Inspection also required that the vessel be manned with one master and two licensed mates. While there is evidence to support a finding that the defendant only equipped its vessel with one mate and one master, this is of no moment to the case at hand. The plaintiff

claims that only the improper manning of the engine room is what caused his alleged injuries, not the manning of the deck. Thus, the Court cannot find that the defendant was in violation of its Certificate of Inspection as it pertains to the engine room.

46 C.F.R. 15.103 (c) provides, "Inspected vessels are issued a certificate of inspection which indicates the minimum complement of officers and crew (including life boatmen) considered necessary for safe operation. The certificate of inspection complements the statutory requirements but does not supersede them." Thus, the Court cannot bar Plaintiff's recovery based solely on the fact that the Certificate of Inspection was in fact violated. Instead, the Court must consider whether the defendant properly manned its vessel in accordance with statutory requirements. Because the Court does not hold the defendant improperly manned its vessel in accordance with the statutory requirements, it cannot hold the defendant liable based on a minor violation of the Certificate of Inspection. Thus, the Court does not hold the defendant liable under the Jones Act nor General Maritime Law.

*Maintenance and Cure*

Plaintiff also seeks recovery of maintenance and cure relating to his exacerbated ulcerative colitis and newly diagnosed diabetes. Maintenance and cure is not tort-based, so a seaman is entitled to maintenance and cure even though he was not injured as a result of any negligence on the part of his employer or any unseaworthy condition of the vessel.[10] To recover maintenance and cure, the plaintiff need only show that he suffered an injury or illness while in the service of the vessel on which he was employed as a seaman, without willful misbehavior on his part. The injury or illness need not be work related, and it may be the recurrence of a

---

[10] Pacific S.S. Co. v. Peterson, 278 U.S. 130, 138 (1928).

preexisting illness; it need only occur while the seaman is in the service of the ship.[11]

Plaintiff contends that he is entitled to maintenance and cure from January 24, 2008, the date which he left the M/V CAROLINE MORRISON and was flown to the hospital, until present. The Plaintiff also contends that he is entitled to attorneys' fees incurred in the pursuit of the maintenance and cure which the defendant allegedly denied the plaintiff. Maximum cure is the point at which no further improvement in the seaman's medical condition is reasonably expected.[12] The obligation to provide maintenance and cure usually ends when qualified medical opinion is to the effect that maximum possible cure has been accomplished. [13]

The defendant was aware of the plaintiff's ulcerative colitis at the time of his application for employment. Thus, the Plaintiff is entitled to maintenance and cure from the time he left the defendant's vessel on January 24, 2008, to the time he received his colostomy, January 26, 2009.

The defendant contends that there is no evidence that it caused or contributed to any aggravation of Plaintiff's pre-existing conditions such that maintenance and cure is available to plaintiff. The defendant maintains that the Plaintiff failed to reveal his pre-existing history of high glucose levels and diabetes at the time he was hired. Thus, his failure to disclose the pre-existing condition disqualifies him from maintenance and cure pursuant to *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968).

In the Fifth Circuit, the rule regarding preexisting medical conditions and denial of maintenance and cure distinguishes between non-disclosure and concealment. Where an

---

[11] Breese v. AWI, Inc., 823 F.2d 100 (5th Cir.1987).

[12] Farrell v. United States, 336 U.S. 511 (1949).

[13] Breese, 823 F.2d at 104-05.

employer does not require a pre-employment medical examination or interview, a seaman is obligated to disclose a condition, when in the seaman's own opinion, the shipowner would consider it a matter of importance. If the employer does require a medical examination, a seaman who misrepresents or conceals any material medical facts, disclosure of which is plainly expected, forfeits the benefits of maintenance and cure. In the latter case, the employer must show that the seaman intentionally misrepresented or concealed the fact, that the non-disclosed facts were material to the hiring decision, and that there is a connection between the withheld information and the injury complained of.[14] In *Jauch*, the 5th Circuit held that the rules relating to maintenance and cure were unrelated to a seaman's entitlement to recover Jones Act damages for his past medical expenses. Maintenance and cure may be awarded even where a seaman has suffered from an illness or injury pre-existing his employment unless the seaman knowingly or fraudulently conceals his condition from the shipowner.[15]

The Court does not find that the plaintiff concealed high glucose levels or his dormant diabetes from the defendant. Accordingly, the Court finds that the Plaintiff is entitled to maintenance and cure as it pertains to both his ulcerative colitis and his diabetes from January 24, 2008 to January 26, 2009.

## E. Conclusion

For the foregoing reasons, the Court awards the plaintiff maintenance of $14,680.00. This amount is based on $40.00 per day from the time the plaintiff left the vessel to the time he had his colostomy. The Court also awards the plaintiff past insurance premiums from March 2008 to the time the plaintiff was placed on social security disability. Additionally, the Court awards the

---

[14] Jauch v. Nautical Services, Inc., 470 F.3d 207, 2007 A.M.C. 93 (5th Cir. 2006).

[15] Heartland Transp. Co. v. Massie, 1986 A.M.C. 2528 (S.D. Ill. 1986).

plaintiff attorneys fees incurred in pursuit of maintenance and cure. The Court orders Plaintiff's counsel to submit a detailed affidavit recounting attorneys fees regarding maintenance and cure within fifteen (15) days of this judgment. In addition, the parties have thirty (30) days from the date of this judgment to submit a joint detailed accounting of the plaintiff's past insurance premiums beginning in March 2008 until the time he was placed on social security disability.

THUS DONE AND SIGNED on this 30 day of July, 2010 at Lafayette, Louisiana.

JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA